<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOHN JUBELT,** | |
| **Plaintiff,** | **Civil Action No. 13-7150 (ES) (MAH)** |
| **v.** | |
| **UNITED MORTGAGE BANKERS, LTD., et al.,** | **OPINION & ORDER** |
| **Defendants.** | |

SALAS, DISTRICT JUDGE

## I.     INTRODUCTION

This action arises out of a residential loan refinancing transaction entered into by Plaintiff John Jubelt.  Before the Court are motions to dismiss by Defendants United Northern Bankers, Ltd. ("United Northern"), (D.E. No. 40), and Bank of America, N.A. ("Bank of America" or "BANA"), (D.E. No. 41).  The Court decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons below, Bank of America's motion is granted. United Northern's motion is granted in part and denied in part.

## II.     BACKGROUND

In April 2009, Plaintiff searched the Internet seeking information about refinancing his mortgage loan to consolidate debt and perform a divorce settlement with his wife.  (D.E. No. 36, Amended Complaint ("Am. Compl."), Factual Background ¶ 16[1]).  In response to Plaintiff's request for information, Defendant Bryan Campos, an employee of United Northern, contacted

---

[1] Because each section of the Amended Complaint is separately numbered, the Court will identify allegations by both section and paragraph number when necessary to avoid confusion.

Plaintiff to discuss obtaining a Federal Housing Administration ("FHA") loan.[2]  (*Id.* ¶ 17).

On April 19, 2009, Plaintiff submitted a refinance loan application to United Northern, seeking to borrow $242,165 at a fixed rate of 4.5%.  (*Id.* ¶ 18).  On the application, Plaintiff declared a monthly income of $4120 and $234,488 in liabilities, more than half of which was unsecured debt.  (*Id.*, Facts Common to All Parties ¶¶ 14-15).  Plaintiff alleges that, at the time, his monthly housing payment, including principal, interest, taxes, and insurance, "far exceeded" 31% of his monthly income, in violation of FHA Guidelines.  (*Id.* ¶¶ 5, 18).

On April 29, 2009, Campo informed Plaintiff that he was approved for an FHA loan at a fixed rate of 4.5%, with monthly payments of $2012, including principal, interest, taxes, and insurance.  (*Id.*, Factual Background ¶ 20).  Also on that date, Campo told Plaintiff that "FHA will be your only outlet because of the flexibility in underwriting standards associated with [Plaintiff's] job history."  (*Id.* ¶ 21).  Campo further informed Plaintiff that he would receive all disclosures in the mail within 72 hours.  (*Id.* ¶ 24).  The next day, on April 30, 2009, Campo sought Plaintiff's assurance that Plaintiff was "on board so their [sic] is no wasted effort."  (*Id.* ¶ 22).

At some point thereafter, Campo informed Plaintiff that he would not be eligible for a fixed rate loan and that only an adjustable rate loan would be available to him.  (*Id.* ¶ 23).

Also at some point thereafter, Plaintiff informed Campo that he had not received all of the required disclosures, and Campo "stated that this was an oversight."  (*Id.* ¶ 24).  Plaintiff asserts that he received certain disclosures within a week after submitting his application, but that he did not receive a Good Faith Estimate or other disclosures required by law until closing on June 12, 2009—despite informing Campo on both May 6, 2009 and May 12, 2009 that he had not received

---

[2] An FHA loan is a loan insured by the FHA.  (Am. Compl., Facts Common to All Parties ¶ 3).  The FHA insures certain loans "from mortgage lenders which are approved by the federal government and meet the FHA minimum mortgage underwriting standards."  (*Id.*).  The FHA "guarantees payments to approved lenders when homeowners with FHA insured mortgages default on their mortgages."  (*Id.* ¶ 4).

the Good Faith Estimate.  (*Id.* ¶ 25).

On June 5, 2009, Campo told Plaintiff that a second investor signed off on the mortgage, but that there was no interest rate lock and the interest rate had increased to 5.25+%.  (*Id.* ¶ 35). Plaintiff further alleges that, on that date, Campo advised Plaintiff "to accept the 5/1 arm at 4.5% interest rate because the '[g]ood part about FHA is you can streamline at any time from 6 months down the road to a 30 year fixed with no closing costs besides title insurance.'"  (*Id.* ¶ 36).

Closing occurred on June 12, 2009 at Plaintiff's home.  (*Id.* ¶ 26).  The mortgage was in the amount of $242,165 with a 4.5% adjustable rate.  (*Id.*, Facts Common to All Parties ¶ 11; *see also* D.E. No. 40-2, Certification of Anthony J. Laura ("Laura Cert."), Ex. B, FHA Adjustable Rate Note ("Note") at 1).[3]  Plaintiff paid $13,637 in closing costs, "with $2421.65 in discount points to United as well as $2380 in a 1% loan discount also to United."  (Am. Compl., Facts Common to All Parties ¶ 12).

Plaintiff alleges that some of the fees were charged to him in violation of applicable law. (Am. Compl, Factual Background ¶ 27).  Specifically, he alleges that he "was charged a 1% origination fee but was not told that he would also be charged a 1% Loan Discount fee.  Despite paying a point for a Loan Discount Fee, plaintiff did not receive any interest rate reduction."  (*Id.* ¶ 28).  Plaintiff further alleges that he questioned Campo about the discount fee after the closing, and that Campo stated that the discount fee is not part of the origination fee.  (*Id.* ¶ 32).

Plaintiff alleges that he "wanted to back out of closing on the Loan," but "could not because he had a deadline to meet per the terms of a formal agreement reached between him and his former spouse, subsequent to the entry of the Judgment of Divorce."  (*Id.* ¶ 29).  This fact was allegedly known to United Northern and Campo.  (*Id.*).

---

[3] Prior to the refinancing, Plaintiff's mortgage was in the amount of approximately $111,777 with a monthly payment of $1898.  (Am. Compl., Facts Common to All Parties ¶ 10).

In addition, Plaintiff alleges that he "did not sign several of the documents – the Loan Application and the Truth in Lending Disclosure statement – and those documents contain signatures purporting to be plaintiff's when, in fact, the signatures are not plaintiff's and thus the signatures are forgeries."  (*Id.* ¶ 32).

Plaintiff alleges that on or about June 12, 2009, the same day as the closing, Plaintiff's Note was endorsed in blank and sold by United Northern to Bank of America.  (Am. Compl., Facts Common to All Parties ¶¶ 19-20).  He further alleges that Bank of America underwrote Plaintiff's loan.  (*Id.* ¶ 21).

Approximately eight months after the closing, Plaintiff contacted Campo regarding a refinancing transaction.  (*Id.*, Factual Background ¶ 33).  Plaintiff alleges that he was "advised that he would be unable to do a streamline refinance that was promised to him and it would have to be an entirely new loan."  (*Id.*).  He further alleges that "Campo advised that he could not guarantee plaintiff's approval on a new loan."  (*Id.*).

With respect to injury, Plaintiff alleges that "[t]he refinance transaction which is the subject of the within matter caused plaintiff's principal to increase, and plaintiff incurred actual costs including Application Fees, Closing Fees, Title Fees, Wire Fees, and Recording Fees."  (*Id.*, Facts Common to All Parties ¶ 24).  Plaintiff alleges that he "attempted to mitigate his damages by listing his home for sale" but was unable to because "United failed to return the Recorded Deed to Plaintiff."  (*Id.*, Factual Background ¶ 37).  Plaintiff does not specify a timeframe for this allegation.

Plaintiff alleges that on February 17, 2010, approximately eight months after closing, "BOA advised that they would not respond to plaintiff's Qualified Written Request[4] because it

---

[4] A Qualified Written Request is a written correspondence sent to a mortgage service "to dispute an error relating to the servicing of your mortgage loan or to request information about the servicing of your

sought information 'that goes beyond that which is available through a Qualified Written Request.'" (*Id.* ¶ 38).  Plaintiff does not specify when he submitted his Qualified Written Request, or the information that he sought to obtain.  He does allege, however, that "BOA advised that plaintiff's loan was owned by Ginnie Mae," which was not disclosed previously to Plaintiff.  (*Id.* ¶ 38).

On or around April 2011, nearly two years after closing, Plaintiff began to have difficulty making mortgage payments "due to a decrease in income and depletion of savings and higher credit card interest rates."  (*Id.* ¶ 39).  Plaintiff asserts that he did not cease making payments at this time, but rather sought the assistance of Bank of America, which was the loan servicer at the time.  (*Id.*).  During this time, Plaintiff alleges that he "tried to make payments," but when he was unable to do so, "Plaintiff made payments of 75% of the monthly amount due."  (*Id.* ¶ 41).

Plaintiff alleges that, at "various times between April and July, 2011, [he] spoke to representatives from BOA: Servicer . . . [who] represented that Plaintiff could apply for a one month forbearance and loan modification and suggested that he do so."  (*Id.* ¶ 40).  He further alleges that Bank of America "failed to process the paperwork for a loan forbearance" and did not advise him to contact an attorney or to seek credit or government counseling.  (*Id.*).

On July 12, 2011, Plaintiff applied for an FHA loan modification with Bank of America.  (*Id.* ¶ 42).  On August 4, 2011, Plaintiff was informed that he was not approved for a loan modification.  (*Id.* ¶ 43).  He alleges that he was not provided with a specific reason for the denial at that time, but that he was later advised that his back end debt-to-income ratio was too high.  (*Id.*).

---

mortgage loan."  Consumer Fin. Prot. Bureau, *What is a Qualified Written Request?*, Consumerfinance.gov, http://www.consumerfinance.gov/askcfpb/207/what-is-a-qualified-written-request-what-is-a-qwr.html (last updated Oct. 7, 2014).

On August 16, 2011, Plaintiff filed a complaint with the Office of the Comptroller of the Currency.[5]   (*Id.* ¶ 44).   He alleges that he received a phone call from a Bank of America representative regarding his complaint, and that the representative "stated that she was going to try to reduce plaintiff's minimum payments on his BOA credit cards to enable plaintiff to obtain a loan modification under FHA Guidelines."  (*Id.* ¶ 45).

On October 27, 2011, Plaintiff asserts that "the Note and Mortgage were assigned by MERS[6] to BOA."  (*Id.* ¶ 46).  On July 25, 2013, Defendant M&T issued correspondence informing Plaintiff that it would be the servicer of Plaintiff's loan, effective August 2, 2013.  (*Id.* ¶ 47).  On September 20, 2013, M&T issued a Notice of Intention to Foreclose indicating that Plaintiff's loan was owned by Defendant Lakeview Loan Servicing, LLC.  (*Id.* ¶ 48).

Plaintiff filed his original Complaint in the Superior Court of New Jersey, Law Division, Bergen County on or about October 23, 2013.  (D.E. No. 1, Notice of Removal at 1-2).  United Northern removed the action to this Court on November 25, 2013.  (*Id.* at 1).  Plaintiff moved to remand, (D.E. No. 8), and Magistrate Judge Joseph A. Dickson issued a Report & Recommendation suggesting that the Court deny the motion, (D.E. No. 19).  The parties did not object, and the Court adopted Judge Dickson's Report and Recommendation by Letter Order dated February 25, 2014.  (D.E. No. 21).

Subsequently, Plaintiff moved to amend his Complaint, (D.E. Nos. 27, 32), and Magistrate

---

[5] The Office of the Comptroller of the Currency is an independent bureau of the U.S. Department of the Treasure that "charters, regulates, and supervises all national banks and federal savings associations as well as federal branches and agencies of foreign banks."  Office of the Comptroller of the Currency, *About the OCC*, OCC.gov, http://www.occ.gov/about/what-we-do/mission/index-about.html (last visited June 12, 2015).

[6] The MERS System is a "national electronic registry system that tracks the changes in servicing rights and beneficial ownership interests in mortgage loans that are registered on the system."  MERSCORP Holdings, Inc., *About Us*, Mersinc.org, https://www.mersinc.org/about-us/about-us (last visited June 12, 2015).

Judge Michael A. Hammer[7] granted Plaintiff's request.  Plaintiff's Amended Complaint includes six counts: (1) a claim under the New Jersey Consumer Fraud Act ("NJCFA") against all Defendants, (Am. Compl. ¶¶ 50-100); (2) a claim for civil conspiracy to commit violations of the NJCFA against all Defendants, (id. ¶¶ 101-118); (3) a claim for common law fraud against all Defendants, (id. ¶¶ 119-130); (4) a claim for civil conspiracy to commit common law fraud against all Defendants, (id. ¶¶ 131-136); (5) a claim under the New Jersey Licensed Lender Act ("NJLLA") against unspecified Defendants, (id. ¶¶ 137-152)[8]; and (6) a claim for violation of the covenant of good faith and fair dealing against unspecified Defendants, (id. ¶¶ 153-158).

On September 8, 2014, United Northern and Bank of America moved separately to dismiss Plaintiff's Amended Complaint.  (D.E. Nos. 40, 41).  Plaintiff responded to both motions on October 13, 2014.  (D.E. No. 47).  United Northern and Bank of America replied separately on October 24, 2014.  (D.E. Nos. 49, 48).

## III.   JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.  (Am. Compl., Jurisdiction and Venue ¶ 12).

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain

---

[7] This case was reassigned from Judge Dickson to Judge Hammer on March 7, 2014.  (D.E. dated 3/7/2014).
[8] In Plaintiff's opposition brief, he "stipulates to withdrawal of this [NJLLA] Count against BOA, without prejudice."  (D.E. No. 47, Plaintiff's Memorandum of Law in Opposition to the Motions to Dismiss of United Northern Mortgage Bankers and Bank of America ("Pl. Opp. Br."), at 34).  However, he continues to pursue this claim as to United Northern.  (Id. at 33-34).  In addition, the Court notes that the NJLLA has been superseded by the New Jersey Residential Mortgage Lending Act, N.J.S.A. § 17:11C-51 (2009) ("NJRMLA"), and the New Jersey Consumer Finance Lending Act, N.J.S.A. § 17:11C-1 (2010) ("NJCFLA").  See also Mogavero v. Allied Home Mortg., 2014 WL 3444614, at *1 (N.J. Super. Ct. App. Div. July 15, 2014) (recognizing supersession of NJLLA).

statement of the claim showing that a pleader is entitled to relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; however it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Furthermore, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d

at 245.

## V.   DISCUSSION

### 1. New Jersey Consumer Fraud Act

"The Consumer Fraud Act, N.J.S.A. § 56:8–1 to –195, provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011).  The NJCFA is intended to be applied broadly in order to accomplish its remedial purpose—namely, to root out consumer fraud—and therefore it is liberally construed in favor of the consumer.  *Id.*  A claim pursuant to the NJCFA requires three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the loss.  *See Dabush v. Mercedes–Benz USA, LLC*, 874 A.2d 1110, 1115 (N.J. Super. Ct. App. Div. 2005) (citations omitted).

The NJCFA defines "unlawful practice" as:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate or with the subsequent performance of such person as aforesaid . . . .

N.J.S.A. § 56:8–2.  An unconscionable commercial practice "necessarily entails a lack of good faith, fair dealing, and honesty.  The capacity to mislead is the prime ingredient of all types of consumer fraud. Mere customer dissatisfaction does not constitute consumer fraud." *In re Van Holt*, 163 F.3d 161, 168 (3d Cir. 1998) (internal citations and quotation marks omitted).  Courts in this Circuit have relied on *Gonzalez* to hold that misrepresentations regarding mortgage modifications fall within the NJCFA, since they are made in connection with the "subsequent performance" of "real estate" under the statute.  *See, e.g., Laughlin v. Bank of Am.*, No. 13–4414,

2014 WL 2602260, at *6 (D.N.J. June 11, 2014) ("The loan modification process, from negotiation to the signing of a permanent modification, effectively operates as a subsequent performance on the original mortgage.").

With respect to the second prong—"ascertainable loss"—the plaintiff must "demonstrate a loss attributable to conduct made unlawful by the [NJ]CFA," which is "quantifiable or measurable," and not merely "hypothetical" or "speculative." *Thiedemann v. Mercedes–Benz USA, LLC*, 183 N.J. 234, 246-52 (2005). However, plaintiffs "need not plead the exact dollar amount of their loss. Instead, plaintiffs must provide enough specificity to give defendants notice of their possible damages." *Giordano v. Saxon Mortg. Servs., Inc.*, No. 12–7937, 2014 WL 4897190, at *6 (D.N.J. Sept. 30, 2014) (internal citation omitted).

Finally, the "causal relationship" required by the NJCFA excuses the victim of fraud from the burden of showing reliance, instead requiring "only proof of a causal nexus between the [unlawful conduct] and the loss." *See Zorba Contractors, Inc. v. Hous. Auth., City of Newark*, 827 A.2d 313, 322 (N.J. Super. Ct. App. Div. 2003). Indeed, the NJCFA specifically states that liability accrues "whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A. § 56:8–2.

United Northern and Bank of America assert both independent and overlapping arguments regarding why the Court should dismiss Plaintiff's NJCFA claim. First, United Northern argues that, to the extent Plaintiff's NJCFA claims rely on violations of certain federal statutes—namely, the Truth in Lending Act ("TILA") and the Real Estate Settlement and Procedures Act ("RESPA")—the claims must be dismissed because the statute of limitations under those statutes has run. (D.E. No. 40-1, Defendant United Northern Mortgage Bankers, Ltd.'s Brief in Support of its Motion to Dismiss the Amended Complaint ("United Northern Mov. Br.") at 11-12). Second,

it argues that Plaintiff has failed to plead both its NJCFA and common law fraud claims with the particularity required under Federal Rule of Civil Procedure 9(b).  (*Id.* at 14-16).  Third, it argues that Plaintiff has failed to plead ascertainable loss.  (*Id.* at 17-19).  And fourth, it argues that Plaintiff has failed to allege reasonable reliance.  (*Id.* at 19-21).

Like United Northern, Bank of America argues that Plaintiff cannot rely on TILA or RESPA because the statute of limitations has run.  (D.E. No. 41-1, Memorandum of Law In Support of Defendant Bank of America N.A.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. Pro. 12(b)(6) ("BANA Mov. Br.") at 12-13).  Also like United Northern, Bank of America argues Plaintiff has not pled fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b), (*id*. at 17-18), and Plaintiff has failed to plead an ascertainable loss, (*id*. at 16-17).  Bank of America also independently argues that Plaintiff's NJCFA claims against it must be dismissed because Plaintiff has failed to make the requisite factual allegations necessary to impose liability on a loan assignee—*i.e.*, allegations detailing Bank of America's involvement with the loan's origination.  (*Id.* at 8-11).  As part of that argument, Bank of America argues that even if Plaintiff's TILA and RESPA claims were not time-barred, those claims cannot support Plaintiff's NJCFA against Bank of America because it is merely the assignee.  (*Id.* at 13-15).  Finally, Bank of America argues that to the extent Plaintiff seeks to base his NJCFA claim against it on activities that occurred after the loan's origination, Plaintiff's allegations are still insufficient.  (*Id.* at 15-16).

The Court will first address the arguments made by both Defendants.  Then, to the extent necessary, it will consider their separate arguments.

### a.  Arguments Asserted by Both United Northern and Bank of America

First, United Northern and Bank of America argue that Plaintiff's NJCFA claim must be

dismissed because it relies entirely on violations of TILA and RESPA, and any claims based on

those statutes fail on statute of limitations grounds.  (United Northern Mov. Br. at 11-12; BANA

Mov. Br. at 12-13).  Both TILA and RESPA carry a one-year statute of limitations for damages

claims.  15 U.S.C. § 1640(e) (A TILA action "may be brought in any United States district court,

or in any other court of competent jurisdiction, within one year from the date of the occurrence of

the violation . . . ."); 12 U.S.C. § 2614 (applying one-year statute of limitations for RESPA actions

arising under § 2607, which covers prohibited fees).

To support its argument that time-barred TILA and RESPA claims cannot support a

NJCFA claim, United Northern relies on *Payan v. GreenPoint Mortg. Funding, Inc.*, No. 08-6390,

2010 WL 5253016, at *5 (D.N.J. Dec. 17, 2010).  In *Payan*, the court held that because "the Court

already has dismissed plaintiffs' TILA claim against GreenPoint . . . any possible violation of the

TILA cannot formulate the basis of a [NJ]CFA claim in this case."  *Payan*, 2010 WL 5353016 at

*5.  United Northern argues that, similarly, "Plaintiff's common law fraud and CFA claims,

premised as they are on alleged TILA and RESPA violations, are untimely and cannot survive."

(United Northern Mov. Br. at 12).  Furthermore, on reply, United Northern adds that "it would be

illogical to allow claims premised upon technical violations which have a Congressionally-

mandated one-year limitations period . . . to be the basis many years out of time for a consumer

fraud claim."  (Defendant United Northern Mortgage Bankers, Ltd.'s Reply Brief in Further

Support of its Motion to Dismiss the Amended Complaint ("United Northern Rep. Br.") at 13).

Plaintiff responds by arguing that he "has not filed a claim" based on TILA and "does not

seek to avail himself of any of the remedies, damages or otherwise," under that statute.  (D.E. No.

47, Plaintiffs' Memorandum of Law in Opposition to the Motions to Dismiss of United Northern

Mortgage Bankers and Bank of America ("Pl. Opp. Br.") at 22-23).  "Instead, he merely relies

upon violations of TILA in support of his claim under the CFA." (*Id.* at 23).[9]  Plaintiff argues that

*Payan* is not applicable because, in that case, the district court dismissed the TILA claim because

there were no substantive TILA violations.  (*Id.*).  As a result, the alleged TILA violations could

certainly not support an NJCFA claim.  (*Id.*).  Plaintiff argues that, by contrast, he has set forth

valid TILA violations that are only barred by the applicable statute of limitations.  (*Id.*).  To support

his argument, Plaintiff relies on *Johnson v. Novastar Mortgage, Inc.*, 698 F. Supp. 2d 463, 472

(D.N.J. 2010).  In *Johnson*, the court dismissed claims brought under TILA, RESPA, and the Home

Ownership and Equity Protection Act ("HOEPA") as time-barred, but permitted NJCFA claims to

proceed.  *Id.* at 473.  In evaluating NJCFA claims, the court specifically noted that:

> Plaintiff has sufficiently alleged that Defendant Novastar violated
> the TILA, HOEPA, and RESPA.  She has similarly alleged that she
> suffered ascertainable loss (including the loss of her home) as a
> consequence of this allegedly unlawful conduct.  Therefore, she has
> met the three elements of a prima facie case under the CFA.

*Id.* at 472 (internal footnotes and citations omitted).  Plaintiff argues that the result in *Johnson*

"compels the rejection of the Defendants' position that TILA violations cannot be utilized in

support of the Plaintiff's CFA claims where the TILA limitations period has expired."  (Pl. Opp.

Br. at 25).

The Court agrees with Plaintiff that his CFA claims do not require automatic dismissal

based on the statutes of limitations of TILA or RESPA.  As Plaintiff points out, *Payan* is

distinguishable from the present case because dismissal of the TILA claims was based on the

court's finding that no substantive violation occurred—not that the claims were time-barred.

*Payan*, 2010 WL 5253016 at *3-5.  Thus, this case is more similar to *Johnson*, where TILA and

---

[9] United Northern appears to construe Plaintiff's NJCFA claims as relying entirely on violations of both
TILA and RESPA.  However, Plaintiff's asserts in its opposition brief that it is relying only on TILA
violations, not RESPA violations.  (Pl. Opp. Br. at 22-30).

other claims were time-barred, but NJCFA claims were permitted to proceed.  In fact, the analysis

by the court in *Johnson* dispenses with United Northern's concern that it would be "illogical" to

permit time-barred TILA and RESPA claims to serve as the basis for an NJCFA claim.  In *Johnson*,

the court held that the plaintiff's alleged violations of TILA, HOEPA, and RESPA supported her

allegation of unlawful conduct under the NJCFA.  *Johnson*, 698 F. Supp. 2d at 472.  In conjunction

with the plaintiff's allegations of ascertainable loss and causation, those alleged violations were

sufficient to establish a *prima facie* case under the statute.  *Id.*  Thus, *Johnson* made clear that a

TILA or RESPA violation can support the "unlawful conduct" element of an NJCFA claim even

if TILA and RESPA claims are time-barred, and that an NJCFA claim can proceed based on those

violations as long as the remaining elements of the claim are met.  *Payan* accords with this holding,

and United Northern has not cited any case holding otherwise.[10]

     *Carrier v. Bank of Am.*, No. 12-104, 2014 WL 356219, at *6 (D.N.J. Jan. 31, 2014), is also

instructive.  In *Carrier*, the plaintiffs sought "to support their fraud claims on the grounds that the

. . . [TILA] disclosure statements presented to plaintiffs were allegedly not consistent with the

mortgage notes and that those TILA disclosure statements [were] 'false and misleading.'"  *Id.*

Though the statute of limitations for TILA had expired, the court noted that "[t]o use TILA as a

way to sustain a claim here (either via fraud, fraud in the inducement or under the New Jersey

Fraud Claims Act, as discussed further below), requires plaintiffs to be able to plead with the

requisite particularity and to satisfy all of the elements of those claims."  *Id.*  Though the pleadings

in *Carrier* were not sufficient, the court recognized that TILA violations could support a state law

---

[10] Similarly, Courts outside of this district have applied the statute of limitations for fraud even when the
fraud claim was based was on TILA and RESPA violations.  *See, e.g.*, *Rosal v. First Fed'l Bank of Cal.*,
671 F. Supp. 2d 1111, 1131 (N.D. Cal. 2009) (applying three-year statute of limitations for fraud to
Plaintiff's "fraud claim [that] is premised on the same failure to disclose that forms the basis of his TILA
and RESPA claims").

fraud claim after the TILA statute of limitations passed—as long as the pleading requirements for fraud were met.

Furthermore, the Court disagrees with Defendants' characterization that alleged TILA and RESPA violations are the *sole* basis for Plaintiff's NJCFA claim, as the Amended Complaint alleges other instances of unlawful conduct. For example, Plaintiff alleges that on June 5, 2009, Campo misrepresented to Plaintiff that he would be able to conduct a streamline refinance in six months. (Am. Compl., Factual Background ¶ 36). He further alleges that Campo misrepresented that "United utilized its own money rather than that of investors." (*Id.* ¶ 34). Therefore, even if Plaintiff were barred from relying on TILA and RESPA violations to support his NJCFA claim, that bar would not alone warrant dismissing the NJCFA claim because Plaintiff included other allegations of unlawful conduct.[11]

Next, United Northern and Bank of America argue that Plaintiff's NJCFA and common law fraud claims must be dismissed because they are not pled with the requisite level of particularity. (United Northern Mov. Br. at 14-17; BANA Mov. Br. at 17-18). Federal Rule of Civil Procedure 9(b) applies to claims under the NJCFA. *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Moreover, "plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999) (citations omitted). This

---

[11] As a final aside, the Court notes that TILA itself states that it is not an exclusive cause of action. In fact, TILA's "savings clause" states that TILA preempts state law only if the state law is inconsistent with TILA. 15 U.S.C. § 1610(b); *see also Barela v. Downey Sav. & Loan Ass'n*, No. 09-3757, 2009 WL 257889, at *4 (C.D. Cal. Aug. 18, 2009). Though preemption has not been raised in this case, it would be illogical for the Court to bar Plaintiff's NJCFA claims under TILA's statute of limitations when TILA expressly acknowledges the availability of such state law remedies.

is because the purpose of the particularity requirement is to put the defendant "on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) (citation omitted).  As discussed above, even when TILA (or RESPA) violations are used to support an NJCFA claim, Plaintiffs still must "be able to plead with the requisite particularity and to satisfy all of the elements of those claims."  *Carrier*, 2014 WL 356219, at *6.

United Northern and Bank of America argue that Plaintiff fails to meet the pleading requirements of Rule 9(b) because Plaintiff does not sufficiently state the "who," "what," "when" and "where" of the alleged fraud.  (United Northern Mov. Br. at 14; BANA Mov. Br. at 5).  Both also point out that the Amended Complaint attributes the fraudulent statements to "defendants" without specifying between them.  (United Northern Mov. Br. at 15-16; BANA Mov. Br. at 6-7).  The Court determines that Plaintiff has pled its NJCFA claim against United with particularity, but it has not done so against Bank of America.

With respect to United Northern, Plaintiff pleads several specific allegedly fraudulent statements or omissions.  For example, Plaintiff alleges that Campo made specific affirmative representations to him on June 5, 2009 that he would be able to complete a streamline refinancing, (Am. Compl., Factual Background ¶ 36), but, eight months later, Campo told him that "he would be unable to do a streamline refinance that was promised to him and it would have to be an entirely new loan," (*id.* ¶ 33).  Plaintiff further alleges that Campo did not provide him with certain disclosures in advance of the loan closing, despite Plaintiff's express requests made on May 6, 2009 and May 12, 2009.  (*Id.* ¶¶ 24-25).  In a similar vein, Plaintiff alleges that, at the June 12, 2009 closing, he asked Campo questions about the loan documents and applicable fees but was not told that he would be charged a 1% loan discount fee in addition to an origination fee.  (*Id.* ¶¶ 28, 31).  Though Plaintiff does not specify a date, he additionally alleges that Campo

misrepresented that "United utilized its own money rather than that of investors." (*Id.* ¶ 34). These allegations, and others throughout the Amended Complaint, are specific misrepresentations that identify the "who, what, when, where, and how" of the alleged fraud. Plaintiff's NJCFA claim against United Northern meets the pleading requirements of Rule 9(b).

On the other hand, Plaintiff has not stated with specificity any statement or omission by Bank of America—either in connection with the origination or servicing of Plaintiff's loan. The Court addresses Plaintiff's allegations with respect to Bank of America's role in origination and servicing separately.

First, Plaintiff concedes that Bank of America is not the original lender of Plaintiff's loan. (Am. Compl., Jurisdiction and Venue ¶ 5). As this district held in *Tutanji v. Bank of America*, No. 23-887, 2012 WL 1964507, at *6 (D.N.J. May 31, 2012), "[s]ince [d]efendant is the servicer of [p]laintiff's mortgage rather than the lender, facts alleged pertaining specifically to inducing Plaintiff to sign the mortgage cannot, without more, be deemed unlawful conduct by Defendant as servicer." 2012 WL 1964507, at *6. Plaintiff argues that "more" has been pled because "Mr. Jubelt's [Amended Complaint], on page 11, paragraph 21 alleges that BOA underwrote plaintiff's loan. Any further inquiry into whether Mr. Jubelt alleged wrongdoing by BOA in the origination of the loan is unnecessary." (Pl. Opp. Br. at 9). The Court disagrees. Plaintiff's barebones statement that, "[u]pon information and belief, Bank of America underwrite [sic] plaintiff's loan" does not meet the heightened pleading requirements of Rule 9(b). (*See* Am. Compl., Facts Common to All Parties ¶ 21). "Plaintiff cannot survive a motion to dismiss by offering only conclusory, unsupported allegations made upon information and belief. Such allegations, without more, fail to demonstrate Plaintiff's plausible entitlement to relief." *Woerner v. FRAM Grp. Operations, LLC*, No. 12-6648, 2013 WL 1815518, at *5 (D.N.J. Apr. 29, 2013). A conclusory

allegation based on "information and belief" is all that Plaintiff has alleged.  Plaintiff has alleged no factual basis for his conclusory allegation that Bank of America underwrote the loan.  He has not alleged any statement or omission made by Bank of America in connection with the origination of Plaintiff's loan—not to mention the date and location of any such statement or the identity of any individual who made such statement.

Plaintiff has also not alleged any misstatement or omission by Bank of America in connection with the servicing of Plaintiff's loan.  The only allegations pertaining to Bank of America's servicing of the loan relate to Plaintiff's seeking of a forbearance or a loan modification. Plaintiff alleges that Bank of America informed Plaintiff that he could apply for a forbearance and loan modification, and that Plaintiff did so.  (Am. Compl., Factual Background ¶ 40).  He alleges that Bank of America failed to process paperwork for the forbearance and that he was denied the loan modification.  (*Id.* ¶¶ 40, 43).  He also alleges that a Bank of America representative "stated that she was going to try to reduce plaintiff's minimum payments on his BOA credit cards."  (*Id.* ¶ 45).  Plaintiff has not alleged that any of these statements amount to misrepresentations or omissions.  He did not allege that he was entitled to a loan modification, forbearance, or reduction in credit card payments—nor did he allege that Bank of America ever represented that he would receive any of these.  Plaintiff's allegations that, for example, he "reasonably believed" that Bank of America would consider his loan application, (*see* Am. Compl. ¶¶ 96-97),  cannot give rise to a NJCFA claim without accompanying and specific allegations that Bank of America in fact made false representations or omissions.  Bank of America's statements do not give rise to a cause of action for Bank of America's own actions in servicing the loan.

Finally, the Court is not persuaded by Plaintiff's argument that Bank of America may be liable as an assignee under the NJCFA for United Northern's conduct.  (*See* Pl. Opp. Br. at 9-13).

"Assignees may be held liable under the NJCFA for their own subsequent performance of the contract, and, in some cases, for the original seller's conduct." *Carmen v. Metrocities Mortg. Corp.*, No. 08-2729, 2009 WL 1416038, at *6 (D.N.J. May 18, 2009) (citing *Jefferson Loan Co., Inc. v. Session*, 938 A.2d 169, 177 (N.J. Super. Ct. App. Div. 2008)).   However, Plaintiff has pointed to no case law suggesting that assignee liability is proper under the facts alleged here. Courts in New Jersey have held that assignee liability is available under the NJCFA when the assignee committed "active and direct" fraud before the assignment of the loan or was unconscionable in its subsequent performance of the assigned contract. *See Psensky v. Am. Honda Fin. Corp.*, 875 A.2d 290, 296 (N.J. Super. Ct. App. Div. 2005); *Jefferson*, 938 A.2d at 177. Alternatively, assignee liability may be available under the NJCFA when tied directly to assignee liability available under a federal statute. *See Psensky*, 875 A.2d at 296; *In re NorVergence, Inc.*, 424 B.R. 663, 689-91 (Bankr. D.N.J. 2010).   Plaintiff has not directed the Court to any cases holding an assignee liable under the NJCFA under the facts alleged here, where there is no substantive allegation that the assignee was involved in the original fraud, committed fraud during its substantive performance of the contract, or is liable as an assignee under any statute.   Therefore, Plaintiff's NJCFA claim and common law fraud claim against Bank of America must be dismissed.[12]

### b.    Additional Arguments by United Northern

Having denied United Northern's motion based on its statute-of-limitations and Rule 9(b) arguments, the Court now considers additional arguments by United Northern.   Specifically, the Court considers United Northern's arguments that Plaintiff's NJCFA claim must be dismissed because Plaintiff has not pled ascertainable loss or reasonable reliance.   (United Northern Mov.

---

[12] Because the Court dismissed Plaintiff's NJCFA claim against Bank of America for failure to plead with specificity under Rule 9(b), it does not need to address Bank of America's additional arguments.

Br. at 17-21).

First, United Northern argues that Plaintiff has "not suffered any loss or damage at all from United Northern's alleged conduct." (*Id.* at 17). It argues that Plaintiff sought and was promised a loan for $242,165.00 with an interest rate of 4.5% and a payment of $2,202, and he received exactly that. (*Id.* at 17-18). Though the rate is adjustable, rather than fixed, United Northern argues that at the time of Plaintiff's Amended Complaint, it had not yet adjusted. (*Id.* at 18). In addition, United Northern argues that Plaintiff will actually benefit from the adjustable feature of the note, since it will adjust to a lower amount. (*Id.*). Finally, United Northern argues that the allegedly "improper fees" cited by Plaintiff could not constitute an ascertainable loss because they were rolled into the loan amount, and therefore would only have decreased the loan proceeds that Plaintiff was allegedly obligated to pay his former wife. (*Id.* at 18-19).

Plaintiff responds that his ascertainable loss is "the indebtedness for the mortgage loan." (Pl. Opp. Br. at 18). He relies on *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 21 (1994) to argue that an improper debt or lien incurred as a result of an NJCFA violation may constitute an ascertainable loss. The Court agrees that, for the purposes of a motion to dismiss, Plaintiff's allegations of ascertainable loss are sufficient. Plaintiff has alleged that he "suffered ascertainable losses including but not limited to service fees related to the refinanced mortgage to which Plaintiff was ineligible, paid interest on the refinanced mortgage to which Plaintiff was ineligible, any and all costs related to the foreseeable refinancing, consequential damages, and cost of attorney fees." (Am. Compl. ¶¶ 73-74). Courts in this district have found the ascertainable loss requirement satisfied based on similar or less substantial allegations. *See, e.g.*, *Mercado v. Bank of Am., N.A.*, 2013 WL 2933217, at *6 (D.N.J. June 13, 2013); *Johnson*, 698 F. Supp. 2d at 472. Though Defendants argue that Plaintiff has benefited from the adjustable feature of the note and that the

fees would only have decreased proceeds to Plaintiffs' former wife, these arguments raise factual questions that are not appropriate for the Court to determine on a motion to dismiss. *See Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) (holding that on a motion to dismiss, "[t]he district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it"). Accordingly, Plaintiff has adequately alleged an ascertainable loss under the NJCFA.

Finally, United Northern argues that Plaintiff has not adequately alleged "reasonable reliance" on United Northern's alleged misrepresentations. (United Northern Mov. Br. at 19-21). Plaintiff responds that he reasonably relied on United Northern's advice to his detriment. (Pl. Opp. Br. at 35-38). However, while reasonable reliance is required to plead common law fraud, it is not required to state an NJCFA claim. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) ("Importantly, unlike common law fraud, the NJCFA does not require proof of reliance.") (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). Rather, "the CFA requires a consumer to prove that [his or her] loss is attributable to the conduct that the CFA seeks to punish by including a limitation expressed as a causal link." *Id.* (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 555 (2009)). "In other words, the alleged unlawful practice must be a proximate cause of the plaintiff's ascertainable loss." *Id.* United Northern's arguments that Plaintiff has not adequately alleged reliance are therefore misplaced. Plaintiff has alleged that United Northern's misrepresentations induced him to purchase a refinanced mortgage for which he could not pay, which resulted in his alleged loss. (Am. Compl. ¶ 73, 76). Plaintiff has further alleged that United Northern's knowing omissions regarding certain closing fees caused Plaintiff to suffer the alleged loss regarding those fees. (*Id.* ¶ 73, 77). Again, Plaintiff's allegations of causation against United Northern are sufficient to withstand a motion to dismiss.

### 2. Common Law Fraud

A cause of action for New Jersey common law fraud requires a plaintiff to prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari*, 148 N.J. at 610. Common law fraud is also subject to the pleading requirements of Rule 9(b). Because Plaintiff has not pled his NJCFA claim against Bank of America with the specificity required by Rule 9(b), his common law claim against Bank of America fails as well. However, the Court determines that Plaintiff has pled the above elements with the requisite specificity as to United Northern.

As discussed above with respect to Plaintiff's NJCFA claim, Plaintiff has alleged specific material representations by United Northern and resulting damages. For purposes of common law fraud, Plaintiff must also allege United Northern's knowledge or belief that its statements were false, United Northern's intention that Plaintiff rely on its statements, and Plaintiff's reasonable reliance on the statements. Plaintiff has alleged that "United and Campo knew that Plaintiff, unknowledgeable and unsophisticated about the process and advantages of certain loans, was relying on them for advice and expertise; as such these Defendants knowingly omitted critical financial details at the time of consultation, at the time Plaintiff submitted the Loan application and before, during and after closing." (*Id.* ¶ 89). Construing Plaintiff's Amended Complaint liberally, this allegation is sufficient to plead that United Northern had knowledge that the alleged misrepresentations and omissions were false and intended Plaintiff to rely on them. Plaintiff has also alleged that he reasonably relied on Campo's representations. (*See id.*, Factual Background ¶ 34 ("Plaintiff's decision to utilize United as his mortgage lender was because as Campo advised, unlike other lenders, United utilized its own money rather than that of investors."); *see also id*,

- 22 -

Facts Common to All Parties ¶ 23 ("Plaintiff relied on United, Campo and John Does' expertise and industry knowledge to advise him on his ability to qualify and repay the mortgage for which he applied.")).

In sum, Plaintiff's has adequately pled common law fraud against United Northern, but this claim must be dismissed against Bank of America.

### 3. Civil Conspiracy to Violate the NJFCA or to Commit Common Law Fraud

United Northern and Bank of America argue that Plaintiff has failed to adequately plead facts giving rise to a civil conspiracy to violate the NJCFA or to commit common law fraud. (United Northern Mov. Br. at 22-23; BANA Mov. Br. at 19-20). Plaintiff's response brief did not address these claims. On reply, Bank of America argues that "[b]ecause Plaintiff has failed to oppose BANA's request to dismiss these claims they should be deemed abandoned." (D.E. No. 48, Reply Memorandum of Law In Support of Defendant Bank of America N.A.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. Pro. 12(b)(6) ("BANA Rep. Br.") at 9).

The Court does not need to consider whether the claims have been abandoned because Plaintiff has not stated a valid claim for conspiracy. To state a valid claim for conspiracy, Plaintiff must allege "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Morris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (citation omitted). In addition, "to succeed on a civil conspiracy claim, the plaintiff must assert an underlying tort claim." *Trico Equip., Inc. v. Manor*, No. 08-5561, 2011 WL 705703, at *8 (D.N.J. Feb. 22, 2011) (citing *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998)). Further, civil conspiracy

is not an independent cause of action, and conspiracy liability depends on liability for the underlying tort. *See, e.g.*, *Eli Lilly*, 23 F. Supp. 2d at 497.

Here, because the Court has dismissed Plaintiff's NJCFA claim against Bank of America, it must also dismiss the corresponding civil conspiracy claim because "a conspiracy is not actionable absent an independent wrong." *Id.*; *see also Dickerson v. Nationstar*, No. 14-6205, 2015 WL 418141, at *3 (D.N.J. Jan. 29, 2015) (dismissing conspiracy claim in mortgage context where no underlying fraud existed). In addition, the Court must dismiss the conspiracy claim against United Northern because Plaintiff has not alleged a "real agreement or confederation with a common design." *See Morganroth & Morganroth*, 331 F.3d at 406. Plaintiff has not alleged any agreement—or even any communication—between any Defendants regarding a scheme to defraud Plaintiff. Plaintiff's conclusory allegations that Defendants "acted in concert" are insufficient to demonstrate the existence of any agreement. Thus, Plaintiff's civil conspiracy claim against United Northern must be dismissed.

### 4. NJLLA

Plaintiff's Amended Complaint asserts a claim under the NJLLA against unspecified defendants. (Am. Compl. ¶¶ 137-140). As mentioned above, *supra* n. 8, Plaintiff's opposition brief "stipulates to withdrawal of this [NJLLA] Count against BOA, without prejudice." (Pl. Opp. Br. at 34). Plaintiff continues to pursue this claim against United Northern. (*Id.* at 33-34).

As also mentioned above, *supra* n. 8, the NJLLA has been superseded by the NJRMLA, N.J.S.A. § 17:11C-51, and the NJCFLA, § 17:11C–1.[13] *See Mogavero*, 2014 WL 3444614 at *1. The Amended Complaint alleges that United Northern engaged in conduct that violates §§ 17:11C-23, -28. (Am. Compl. ¶¶ 140-146). However, these sections of the NJLLA were repealed

---

[13] The Court notes that while Defendants do not raise this issue in their briefs, the Court is constrained to dismiss this claim because no cause of action exists.

following the enactment of the NJCFLA and NJRMLA.  2009 N.J. Laws c. 53, § 73; *see also*

*Mogavero*, 2014 WL 3444614 at *13 ("Provisions of N.J.S.A. 17:11C-22 to -31, which pertained

to broker fees, were repealed.").  Because the sections of the NJLLA that Plaintiff relies on have

been repealed, and because Plaintiff has failed to allege any illegal conduct under the NJRMLA or

NJCFLA, Plaintiff's claim under the NJLLA must be dismissed.[14]  *See Mogavero*, 2014 WL

344614 at *13-15.  In addition, even if Plaintiff had asserted illegal conduct under the NJCFLA,

there is no private right of action available under that statute.  *See Veras v. LVNV Funding, LLC*,

No. 13-1745, 2014 WL 1050512, at *7-9 (D.N.J. Mar. 17, 2014) ("A review of the NJCFLA

reveals that the Legislature did not provide for a private right of action in order to enforce the

requirements of the Act.").[15]  For all of the above reasons, Plaintiff's NJLLA claim cannot survive

and the Court does not need to consider United Northern's additional arguments regarding this

claim.

### 5. Covenant of Good Faith and Fair Dealing

United Northern and Bank of America both move to dismiss Plaintiff's claim for a violation

of the covenant of good faith and fair dealing.  (United Northern Mov. Br. at 12-14; BANA Mov.

Br. at 20-21).  "All contracts, under New Jersey law, include an implied covenant that the parties

to the contract will act in good faith."  *Tredo v. Ocwen Loan Servicing, LLC*, 2014 WL 5092741,

at *6 (D.N.J. Oct. 10, 2014) (citing *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420

(1997)).  The implied covenant of good faith and fair dealing "mandates that neither party shall do

anything which will have the effect of destroying or injuring the right of the other party to receive

---

[14] For this reason, the Court does not need to assess Plaintiff's argument, (Pl. Opp. Br. at 33-34), that United Northern is subject to the provisions of the NJLLA because it qualifies as "Residential mortgage broker" under N.J.S.A. § 17:11C-53, and is not merely a mortgage lender.

[15] The Court has not identified any cases indicating whether a private right of action exists under the NJRMLA, but does not need to reach this question because Plaintiff has not alleged any violations of that statute.

the fruits of the contract." *Id.* (quoting *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 254 (N.J. Super. Ct. App. Div. 2002)) (internal quotation marks omitted).  As Bank of America points out, and Plaintiff does not contest, the only contracts identified in the Amended Complaint are the Note and the Mortgage.  (*See* BANA Mov. Br. at 20-21).

United Northern argues that this claim must be dismissed because "the covenant pertains to the parties' *performance* of their contract, not to negotiations and other dealings leading up into the entry of the contract." (United Northern Mov. Br. at 12).  United Northern argues that "[h]ere, Plaintiff's allegations of wrongdoing against United Northern consistently and exclusively deal with pre-contract conduct" and that "Plaintiff alleges no conduct by United Northern at all in the post-closing performance under the loan agreement, much less any conduct that might have crossed the line of good faith and fair dealing." (*Id.* at 13).  Plaintiff does not substantively address this argument in his opposition brief, and falls back on the conclusory allegations asserted in the Amended Complaint—namely, that "Defendants failed to act in good faith when negotiating the Loan, contracts, Mortgage and Note, and when rendering performance under same [sic]."  (Am. Compl. ¶ 156; Pl. Opp. Br. at 35).

The Court agrees with United Northern that, because Plaintiff has not alleged facts relating to United Northern's performance and enforcement of any contract, his breach of implied covenant claim against United Northern must be dismissed.  Under New Jersey law, "[t]he covenant of good faith and fair dealing focuses on the performance and enforcement of a valid agreement more than it regulates contract formation."  *In re Estate of Fischer*, No. 107359, 2011 WL 2314353, at *4 (N.J. Super. Ct. App. Div. June 14, 2011).  "Therefore, the implied covenant of good faith and fair dealing does not require 'either side in negotiations to reveal any and all information that might help the adversary and hurt his or her own client.'"  *Id.* (quoting *Brundage v. Estate of Carambio*,

195 N.J. 575, 609 (2009)).  Instead, the covenant directs that "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[,]' *once it is entered into*."  *Id.* (emphasis added) (quoting *Sons of Thunder*, 148 N.J. at 420).  As United Northern points out, Plaintiff's factual allegations against it relate to conduct prior to the loan's closing.  (United Northern Mov. Br. at 13).  In fact, Plaintiff alleges that on or about the same day as the closing, United Northern sold Plaintiff's Note to Bank of America—removing United Northern from the picture.  (Am. Compl., Facts Common to All Parties ¶¶ 19-20).  As a result, Plaintiff cannot sustain a claim against United Northern for breach of the covenant of good faith and fair dealing.

Bank of America argues that Plaintiff's breach of implied covenant claim must be dismissed against it because "Plaintiff does not set forth any facts that would support a claim that BANA violated the Note or Mortgage."  (BANA Mov. Br. at 20-21).  It argues that "Plaintiff's conclusory and generalized statement that 'Defendants' breached their duty to act fairly and in good faith is insufficient to sustain this claim."  (*Id.*).  Plaintiff provides the same conclusory response to Bank of America's argument that it provides for United Northern.  (Pl. Opp. Br. at 35).

The Court agrees with Bank of America that Plaintiff has not sufficiently pled facts to support a claim that Bank of America breached the implied covenant of good faith and fair dealing.  As discussed above with respect to Plaintiff's NJCFA claim, the only facts alleged in the Amended Complaint regarding Bank of America's performance and enforcement of the Note or Mortgage pertain to Plaintiff's efforts to obtain a loan forbearance and modification.  (Am. Compl., Factual Background ¶¶ 40, 42-45).  Specifically, Plaintiff alleges that Bank of America suggested that he apply for a one-month forbearance and loan modification, and that Plaintiff submitted applications for both.  (*Id.* ¶¶ 40, 42).  He alleges that Bank of America "failed to process the paperwork for a

loan forbearance" and that "he was not approved for the loan modification, with no specific reason for the denial." (*Id.* ¶¶ 40, 43). Plaintiff states that he was "later advised" that the reason for the denial was that "his back end debt-to-income ratio was too high." (*Id.* ¶ 43). Neither of these incidents amount to a breach of the covenant of good faith and fair dealing. New Jersey requires a "state of mind or malice[-]like element to breach of good faith and fair dealing." *Sarlo v. Wells Fargo Bank, N.A.*, No. 12-5522, 2015 WL 1334038, at *9 (D.N.J. Mar. 24, 2015) (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001)). As a result, "[e]xercises of discretion for 'ordinary business purposes' do not constitute an improper motive." *Id.* Plaintiff has not alleged any malicious motivation for Bank of America's failure to process his loan forbearance paperwork or approve his loan modification request. With respect to the forbearance, Plaintiff simply alleges that Bank of America failed to process the paperwork—he provides no additional factual support for this claim, nor does he provide any facts from which the Court could infer malice or improper motive. With respect to the loan modification, Plaintiff admits in his opposition brief that he is not entitled to a modification as a matter of law, and argues instead that he is "entitled to have is [sic] loan modification viewed in good faith and in accordance with FHA Guidelines." (Pl. Opp. Br. at 21). However, Plaintiff does not include any allegation that Bank of America failed to consider his loan application in accordance with those guidelines. Furthermore, Plaintiff's own allegations regarding his loan modification denial reveal that his request was denied for ordinary business purposes—because his debt-to-income ratio was too high. (Am. Compl., Factual Background ¶ 43). Accordingly, Plaintiff's claim against Bank of America for breach of the implied covenant of good faith and fair dealing must be dismissed.

### 6. Plaintiff's Allegations of Forgery

Plaintiff's Amended Complaint contains allegations that the signatures on Plaintiff's Loan

Application and Truth-In-Lending statement are not his, and that they were therefore forged without his knowledge or consent.  (Am. Compl., Factual Background ¶ 32).  In his opposition to Defendants' motions to dismiss, Plaintiff argues that "[w]hat the forgery does, however, is further support the departure from the appropriate lending standards including, but not limited to FHA's guidelines, and due diligence that should have been conducted by United and BOA."  (Pl. Opp. Br. at 40).  However, Plaintiff's asserted claims do not allege liability stemming from a departure from FHA guidelines or failure to conduct due diligence.  Moreover, Plaintiff does not allege that either Defendant forged the documents; he simply states that "thus the signatures are forgeries." (*Id.*).  Neither Plaintiff's Amended Complaint nor his opposition brief explain how this allegation ties to the claims asserted in this case.  Accordingly, Plaintiff's allegations and arguments regarding the alleged forgery do not alter the outcome of any of Plaintiff's claims.

## VII.   CONCLUSION

For the reasons above, Bank of America's motion to dismiss the Amended Complaint, (D.E. No. 41), is granted and United Northern's motion to dismiss the Amended Complaint, (D.E. No. 40), is granted in part and denied in part.

Accordingly, it is on this 30th day of June 2015, hereby

**ORDERED** that Bank of America's motion to dismiss, (D.E. No. 41), is granted as to Counts 1-6 *without prejudice*; and it is further

**ORDERED** that United Northern's motion to dismiss, (D.E. No. 40), is granted *without prejudice* as to Counts 2, 4, 5, and 6 and denied as to Count 1 and 3; and it is further

**ORDERED** that the Clerk of the Court may terminate D.E. Nos. 40 and 41.

**SO ORDERED.**

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

- 29 -